753 So.2d 555 (1999)
THE FLORIDA BAR, Complainant,
v.
Taryn Xenia TEMMER, Respondent.
No. 93,886.
Supreme Court of Florida.
December 16, 1999.
*556 John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Staff Counsel, Tallahassee, Florida; and Monica Ann Frost, Assistant Staff Counsel, Tampa, Florida, for Complainant.
Scott K. Tozian of Smith & Tozian, P.A., Tampa, Florida, for Respondent.
PER CURIAM.
We have for review the referee's report and recommendations regarding alleged ethical violations by attorney Taryn Xenia Temmer.[1] The question in this case is whether the referee's recommended discipline of a ninety-day suspension followed by three years' probation for Temmer's drug-related misconduct has a reasonable basis in existing caselaw where Temmer has been previously so disciplined for similar misconduct and committed her present misconduct while still on disciplinary probation. We resolve this question in the negative, reject the referee's recommended discipline of a ninety-day suspension followed by three years' probation, and instead suspend Temmer for ninety-one days (which will require Temmer to prove rehabilitation before being reinstated to membership in The Florida Bar) followed by three years' probation.

FACTS
In 1994, this Court suspended Temmer for ninety days followed by three years' probation for disciplinary violations arising from her use of marijuana and crack cocaine. See Florida Bar v. Temmer, 632 So.2d 1359 (Fla.1994). In so disciplining Temmer, and as especially relevant in the present case, this Court in 1994 explicitly disapproved the referee's recommended discipline of a ninety-one-day suspension and proof of rehabilitation, finding in pertinent part:
The referee made findings that Temmer has not become drug dependent and that her competence as a practicing attorney is not at issue. The referee also stated that he took into consideration that Temmer sought professional assistance for her drug use and that she has no prior disciplinary actions.
... Temmer sought the assistance of a mental health counselor to deal with her abusive relationship with [her boyfriend] Alvaro; she contacted F.L.A.[[2]] and sought the assistance of a psychiatrist specializing in addictionology; and she also sought help from a licensed clinical social worker. Based upon the psychiatrist's report and the F.L.A. evaluation, F.L.A. advised the Bar that there "does not appear to be sufficient evidence upon which to infer a substance abuse problem", and that they would not be further involved unless advised otherwise. Although Temmer did resume cocaine use during her brief renewed relationship with Alvaro, she has not used any drugs since January 1992 and has had no contact with Alvaro since then. Three mental health experts testified that Temmer's problems are related to her personality and relationships, and that she is not drug-dependent. Four unannounced urine drug screens conducted *557 from March 1992 through May 1993 were negative. This evidence supports a finding of rehabilitation.
Id. at 1360-61.
Toward the end of the probationary portion of her 1994 discipline, Temmer was arrested and criminally charged with possession of marijuana, cocaine, valium, and drug paraphernalia. Temmer pled not guilty and prevailed on a suppression motion. The criminal charges were ultimately dismissed.
The Bar nevertheless pursued disciplinary action, alleging multiple disciplinary violations based on the facts underlying the drug arrest and the charges arising therefrom.[3] The parties ultimately entered into a joint stipulation, wherein Temmer stipulated to those facts and admitted guilt of the Bar's disciplinary charges.
At a subsequent hearing regarding the discipline to be imposed, Temmer presented substantial mitigating evidence (discussed immediately below in the referee's findings of fact and mitigation). In his report, the referee ultimately recommended finding Temmer guilty as charged.[4] As to discipline, the referee found that
although Respondent was on disciplinary probation at the time of this violation, she was not found guilty of any criminal conduct in a criminal court. Further, I find that the Respondent voluntarily submitted herself to FLA, Inc. for evaluation. She further submitted to a seven-day residential evaluation at Health-Care connection at the recommendation of FLA, Inc. As part of this program, Respondent was referred to a psychiatrist for further evaluation. Dr. James E. Adams, the psychiatrist, testified that Respondent was suffering from either Cyclothymic Disorder or Bi-Polar Disease, a long-term pre-existing psychological condition. Dr. Adams prescribed Lithium to treat this disorder. Dr. Adams testified that the likelihood of a recurrence of the substance abuse by the Respondent is greatly diminished, if she remains on her medications as prescribed.
I specifically find that if Respondent had been diagnosed with Cyclothymic Disorder or Bi-Polar Disease during the time of her first disciplinary offense in 1994, there may have been a substantial difference in the treatment that was recommended. Respondent has complied with all other conditions of her probation. No clients have been harmed, and Respondent's ability to competently practice law was substantiated by the testimony of judges in front of whom she has appeared, and lawyers with whom she has worked.
In mitigation, the referee found that Temmer had personal or emotional problems; that she had provided full and free disclosure to the disciplinary board or a cooperative attitude toward the proceedings; that she had a physical or mental disability or impairment; that she had interim rehabilitation; and that she showed remorse. In aggravation, the referee found that Temmer had been previously disciplined (i.e., her 1994 ninety-day suspension followed by a three-year probation for drug-related offenses). The referee ultimately recommended that Temmer again be suspended for ninety days, followed by three years' probation, and that she continue treatment with F.L.A., Inc., comply with the terms of *558 the rehabilitation contract she had entered into with F.L.A., Inc., and pay the Bar a monitoring fee of $100 per month.

ANALYSIS
The Bar now petitions for review, urging that the referee's recommended discipline is inadequate and that this Court should instead "suspend [Temmer] for ninety-one days based on the serious nature of [her] misconduct, The Florida Standards for Imposing Lawyer Sanctions and relevant case law." We agree.
"Although a referee's recommended discipline is persuasive, [this Court] does not pay the same deference to this recommendation as [it does] to the guilt recommendation because this Court has the ultimate responsibility to determine the appropriate sanction." Florida Bar v. Sweeney, 730 So.2d 1269, 1272 (Fla. 1998). However, generally speaking, this Court "will not second-guess a referee's recommended discipline as long as that discipline has a reasonable basis in existing caselaw." Florida Bar v. Lecznar, 690 So.2d 1284, 1288 (Fla.1997). In making this determination, this Court considers not only caselaw but also the Florida Standards for Imposing Lawyer Sanctions. See, e.g., Sweeney, 730 So.2d at 1272 ("[W]e agree with the Bar's contention that the referee's recommended discipline is inadequate in this case, and we do not find a reasonable basis for it in existing case law or in the Standards for Imposing Lawyer Sanctions.").
We find that the referee's recommended discipline in the present case that Temmer be suspended for ninety days followed by three years' probation does not have "a reasonable basis in existing caselaw." Lecznar, 690 So.2d at 1288. But for several incidental variations in probationary conditions, the present recommended discipline is identical to Temmer's previous discipline for similar misconduct in 1994. See Temmer, 632 So.2d at 1361. Florida Standard for Imposing Lawyer Sanctions 10.3 provides:

Absent the existence of aggravating factors, the appropriate discipline for an attorney found guilty of felonious conduct as defined by Florida State law involving the personal use and/or possession of a controlled substance who has sought and obtained assistance from F.L.A., Inc., or a treatment program approved by F.L.A., Inc., as described in paragraph one above, would be as follows:
(a) A suspension from the practice of law for a period of 91 days or 90 days if rehabilitation has been proven; and
(b) A three-year period of probation, subject to possible early termination or extension of said probation, with a condition that the attorney enter into a rehabilitation contract with F.L.A., Inc. prior to reinstatement.
(Emphasis supplied.) This Court applied this standard in Temmer's 1994 disciplinary proceeding in explicitly rejecting the referee's recommended discipline of a ninety-one-day suspension and proof of rehabilitation, holding:
In light of [the] evidence and Standard 10.3(a), we find a ninety-day suspension to be the appropriate discipline in this case. Thus, we disapprove the referee's recommended discipline of a ninety-one-day suspension and proof of rehabilitation. However, we agree with the referee that a three-year probationary period is appropriate, in light of Temmer's history.
Temmer, 632 So.2d at 1361. Significantly, however, "Temmer's history" now includes significant aggravation-namely, Temmer's 1994 discipline for similar misconduct arising from her use of marijuana and crack cocaine. See Fla. Stds. Imposing Law. Sancs. 9.22(a) (listing "prior disciplinary offenses" as an aggravating factor). Indeed, but for the substantial mitigation presented, disbarment might have been in order here. See Fla. Stds. Imposing Law. Sancs. 8.1(b) ("Absent aggravating or mitigating circumstances, and upon application *559 of the factors set out in Standard 3.0, ... [d]isbarment is [generally] appropriate when a lawyer ... has been suspended for the same or similar misconduct, and intentionally engages in further similar acts of misconduct.").
While disbarment is certainly not in order here, this Court's caselaw dictates that Temmer's present discipline be more severe than her previous discipline for similar misconduct. In Florida Bar v. Bern, 425 So.2d 526, 527-28 (Fla.1982), the attorney at issue had been twice privately reprimanded and once publicly reprimanded for misconduct arising out of solicitation and business dealings with clients. In rejecting the referee's recommendation that the attorney again be publicly reprimanded for further misconduct involving clients, this Court held:
In rendering discipline, this Court considers the respondent's previous disciplinary history and increases the discipline where appropriate. The Court deals more harshly with cumulative misconduct than it does with isolated misconduct. Additionally, cumulative misconduct of a similar nature should warrant an even more severe discipline than might dissimilar conduct. The referee's [recommended] discipline [of a public reprimand] does not accord with the principle of cumulative discipline. Considering respondent's previous history and the fact that this involves another instance of business matters with clients, the respondent should be suspended [for three months and one day].
Id. at 528 (emphasis supplied) (citations omitted).[5] In addition to the cumulativeness of Temmer's misconduct, it is relevant that she was on probation for prior similar misconduct when she committed the present misconduct. In disbarring an attorney in Florida Bar v. Orta, 689 So.2d 270 (Fla.1997), this Court held:
[T]his Court deals more harshly with cumulative misconduct than it does with isolated acts. In this case, [the attorney, who had been previously suspended for income tax evasion,] was found guilty in three separate counts of multiple offenses involving dishonesty.... Moreover, [the attorney] committed these offenses while still under suspension for similar misconduct....
Despite the evidence of recent rehabilitation and other mitigation, we are unable to overcome the fact that [the attorney's] current multiple violations all took place while he was under suspension *560 for past similar misconduct involving dishonesty-a time when he should have been conducting himself in the most upstanding manner.

Id. at 273 (citation omitted) (emphasis supplied); see also Florida Bar v. Bauman, 558 So.2d 994, 994 (Fla.1990) (disbarring attorney for practicing law during his six-month suspension, holding "[w]e can think of no person less likely to be rehabilitated than someone ... who willfully, deliberately, and continuously refuses to abide by an order of this Court"). That Temmer committed her present misconduct while on probation (as opposed to while under suspension) is not determinative-she still "should have been conducting [her]self in the most upstanding manner." Orta, 689 So.2d at 273.
Cases cited by Temmer to support the referee's recommended discipline are distinguishable and actually tend to support the Bar's argument for a harsher discipline. Temmer relies primarily on Florida Bar v. Liroff, 582 So.2d 1178, 1179 (Fla. 1991), in which this Court had initially privately reprimanded an attorney for misconduct arising from his addiction to a synthetic opiate cough syrup, recommending that he undergo any treatment recommended by F.L.A., Inc. Several years later, upon the attorney's failure to fulfill the conditions of his substance abuse program, this Court placed him on probation for two years and thereafter until he could demonstrate rehabilitation pursuant to an F.L.A, Inc. contract. Id. Finally, upon subsequently finding that the attorney had again abused narcotic substances, this Court held him in contempt and suspended him for sixty days, followed by a probationary period lasting two years and thereafter until his condition was "such that he is unlikely to continue abusing mind-impairing substances and that no threat is posed to his clients as a result of his chemical dependency." Id. at 1179-80.
Temmer cites Liroff for the proposition that a ninety-one-day suspension in her case would be comparatively harsh, arguing that "after three strikes, Liroff received a shorter non-rehabilitative suspension than that of the Respondent for her first disciplinary action [in 1994]." Significantly, however, Temmer's 1994 discipline is not directly at issue here, and her argument overlooks the fact that each progressive discipline in Liroff was more severe than the one before it and that this Court paid particular attention to the drug-related nature of the misconduct and the fact that the attorney at issue had violated the terms of his disciplinary probation. This Court in Liroff held at length:
The standard in cases of this type is not merely that the attorney presently suffers no addiction. Serious impairment perhaps resulting in serious harm to a clientcan occur in a single episode, without the attorney ever actually becoming addicted again.
More to the point, an attorney previously addicted to impairing substances is under a continuing obligation to comply with the terms of probation imposed by this Court, including good-faith compliance with treatment programs administered by FLA. Even a single episode of substance abuse is a violation of this obligation, whether or not renewed "addiction" results. Impaired attorneys are a serious problem that this Court takes very seriously.

. . . .
... [T]he totality of this record substantially supports the referee's conclusion that [the attorney] violated the terms of his probation here. In particular, attorneys under probation should avoid ever taking a chemical substance to which they previously have been addicted, even if it is done "for medicinal purposes." The renewed use of such substances is strong evidence of a violation of the terms of probation, especially since [the attorney] has not demonstrated that other nonaddictive medications were unavailable to treat his cold. These episodes may have been "lapses," but they are lapses that [the attorney] *561 was under an obligation to guard against pursuant to the orders previously entered by this Court.

. . . .
... We caution Liroff that the unexcused failure to fulfill [conditions of his suspension] will constitute a further contempt of this Court justifying more serious discipline.

Id. (emphasis supplied).
Temmer also relies on Florida Bar v. Pipkins, 708 So.2d 953 (Fla.1998), in which this Court rejected the referee's recommended ninety-one-day suspension and instead suspended an attorney for ninety days for committing several trust account violations while serving a sixty-day suspension and an eighteen-month probation for similar misconduct. Again, Pipkins more supports the Bar's position: the attorney at issue was more severely sanctioned for cumulative misconduct committed while under discipline-precisely what the Bar seeks here. Several other cases cited by Temmer involve neither previous misconduct nor violations of disciplinary terms, and offer little guidance here. See Florida Bar v. Levine, 498 So.2d 941 (Fla.1986) (public reprimand for misdemeanor cocaine conviction); Florida Bar v. Piggee, 490 So.2d 1260 (Fla.1986) (sixty-day suspension for cocaine possession where attorney had a "lack of prior criminal or disciplinary history").
Finally, in urging that the Bar's primary motivation in seeking a ninety-one-day suspension is to simply punish her, Temmer cites DeBock v. State, 512 So.2d 164, 167 (Fla.1987), for the proposition that "bar discipline exists to protect the public, and not to `punish' the lawyer." However, protection of the public, encouragement of reformation and rehabilitation, and deterrence of like conduct from other attorneys are additionally urged by the Bar here, and are all recognized objectives of attorney discipline. See, e.g., Florida Bar v. Lord, 433 So.2d 983, 986 (Fla.1983). Additionally, as opposed to being regarded as punishment, a ninety-one-day suspension requiring proof of rehabilitation would ultimately be in Temmer's best interests-she has all but proven rehabilitation already, and to have to do so again at the end of her suspension will ensure that she has remained drug-free and on the right course. Moreover, as discussed at length above, an increased suspension in the present case provides consistency with existing standards and caselaw. See Fla. Stds. Imposing Law. Sancs. 1.3 (standards are designed to promote "consistency in the imposition of disciplinary sanctions for the same or similar offenses within and among jurisdictions").

CONCLUSION
We are not unmindful of, and in fact commend Temmer for, her exhaustive efforts toward rehabilitation. Nor are we unmindful that, as found by the referee, Temmer "was not found guilty of any criminal conduct in a criminal court"; that "if [she] had been diagnosed with Cyclothymic Disorder or Bi-Polar Disease during the time of her first disciplinary offense in 1994, there may have been a substantial difference in the treatment that was recommended"; and that she "has complied with all other conditions of her probation[,]... [n]o clients have been harmed, and [her] ability to competently practice law was substantiated by the testimony of judges in front of whom she has appeared, and lawyers with whom she has worked." Nevertheless, as emphasized by this Court in Liroff, "[i]mpaired attorneys are a serious problem that this Court takes very seriously" and, as held therein, "an attorney previously addicted to impairing substances is under a continuing obligation to comply with the terms of probation imposed by this Court." 582 So.2d at 1180. As in Liroff, Temmer's drug-related misconduct in the present case may have resulted from a "lapse," but it was a lapse "that [she] was under an obligation to guard against pursuant to the order[] previously entered by this Court." Id.
*562 In light of the cumulative nature of Temmer's present misconduct and the fact that she committed same while on disciplinary probation, Temmer's present discipline must be more severe than her previous discipline for similar misconduct. We accordingly reject the referee's recommendation that Temmer be suspended for ninety days, and instead suspend Temmer for ninety-one days, which will require that she prove rehabilitation before being reinstated to membership in The Florida Bar. We approve all other aspects of the referee's recommended discipline.
Accordingly, Taryn Xenia Temmer is hereby suspended from the practice of law for ninety-one days followed by three years' probation; she shall continue treatment with F.L.A., Inc., comply with the terms of the rehabilitation contract she entered into with F.L.A., Inc., and pay the Bar a monitoring fee of $100 per month. The suspension will be effective thirty days from the filing of this opinion so that Temmer can close out her practice and protect the interests of existing clients. If Temmer notifies this Court in writing that she is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Temmer shall accept no new business from the date this opinion is filed until the suspension is completed. Judgment is entered for the The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399, for recovery of costs from Taryn Xenia Temmer in the amount of $920.12, for which sum let execution issue.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] We have jurisdiction. See art. V, § 15, Fla. Const.
[2] F.L.A. is the abbreviation for the Florida Lawyers Assistance, a program that "was created to help substance-abusing attorneys overcome their addictive disorders." In re Norris, 581 So.2d 578, 579 (Fla.1991).
[3] Specifically, the Bar charged Temmer with violating Rules Regulating The Florida Bar 3-4.3 (commission by a lawyer of any act that is unlawful or contrary to honesty and justice); 3-4.4 (Bar may initiate disciplinary action regardless of whether the respondent has been tried, acquitted, or convicted for the alleged criminal offense); 4-8.4(a) (a lawyer shall not violate or attempt to violate the rules of professional conduct); and 4-8.4(b) (a lawyer shall not commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects).
[4] We approve without discussion the referee's uncontested recommendation that Temmer be found guilty as charged.
[5] Accord, e.g., Florida Bar v. Cox, 718 So.2d 788, 794 (Fla.1998) ("[T]he circumstances of these consolidated cases, coupled with [the attorney's] prior discipline, warrant disbarment rather than the referee's recommended three-year suspension.... [The attorney's] misconduct with respect to several of [the present] violations involved dishonesty and misrepresentation. What in our view justifies disbarment is that [the attorney] has previously been disciplined for dishonesty and misrepresentation to his law firm and clients."); Florida Bar v. Nesmith, 707 So.2d 331, 333 (Fla.1998) ("In view of the serious violation for which respondent was found guilty [i.e., failing to act with reasonable diligence and promptness] and respondent's history of similar violations for which he received two public reprimands, we find that the referee's recommendation of a public reprimand in this case is clearly erroneous. This Court deals more harshly with cumulative misconduct than it does with isolated acts.... [T]he appropriate discipline in this case is a thirty-day suspension."); Florida Bar v. Laing, 695 So.2d 299, 304 (Fla.1997) ("[W]e find the recommended discipline [i.e., a 90-day suspension] to be in conflict with the numerous cases wherein we imposed greater discipline due to the cumulative effect of multiple violations.... [W]e find a ninety-one day suspension appropriate for [the attorney's] conduct."); Florida Bar v. Rolle, 661 So.2d 296, 298 (Fla.1995) ("We ... find the recommended discipline [i.e., a 6-month suspension] appropriate in light of the fact that a private reprimand has failed to deter [the attorney] from engaging in this misconduct in the past and he is presently being suspended for ninety-one days in another case before this Court for neglecting client business."); Florida Bar v. Knowles, 572 So.2d 1373, 1375 (Fla.1991) ("[R]epeated instances of similar misconduct should be treated cumulatively so that a lawyer's disciplinary history can be considered as grounds for more serious punishment.").